**UNITED STATES of America, Appellee,**

v.

**Ronald E. PURHAM, Appellant.**

**No. 83–1495.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1983.

Decided Jan. 16, 1984.

Thomas E. Dittmeier, U.S. Atty., Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for appellee.

William Edward Taylor, St. Louis, Mo., for appellant.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Ronald E. Purham appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri upon a jury verdict finding him guilty of forcibly robbing a postal employee of United States Post Office keys. The district court sentenced appellant to twenty-five years imprisonment. For reversal appellant argues that the district court erred in denying (1) his motion to dismiss the indictment on the grounds of preindictment delay, (2) his motion for expert witness services at government expense, and (3) his motion to suppress a preindictment lineup identification. For the reasons discussed below, we affirm the judgment of the district court.

On July 28, 1981, while investigating a consumer complaint, a postal employee was robbed by two men, one of whom was armed with a sawed-off shotgun. The robbers took the postal employee's cash, jewelry, credit cards, and six United States Post Office keys. The keys opened a registered mail vault where mail valued at $1,000 or more was kept.

The postal employee immediately reported the robbery and gave a description of the robbers to local police and federal postal inspectors. While canvassing the neighborhood where the robbery took place, one of the investigating federal postal inspectors discovered a witness who had seen two men at the site of the robbery immediately before and after the robbery. The witness had not seen the robbery but his description of the two men closely matched the description given by the victim. The witness identified appellant by name as one of the two men he had seen and provided appellant's address.

The day after the robbery the federal postal inspector and local police went to the address that had been provided by the witness. The federal postal inspector recognized appellant from the descriptions given by the victim and by the witness but decided not to question appellant that day. The federal postal inspector testified that he thought appellant was intoxicated at that time.

The next day, July 30, 1981, the federal postal inspector and local police returned to the address and knocked on the door. Appellant's mother and sister answered the door. One of the investigating officers asked to speak with appellant. The women permitted them to enter the residence. As the investigating officers entered, they saw appellant coming down the stairs. Shortly thereafter appellant was arrested by the local police. The victim later identified appellant in a lineup as the robber with the shotgun.

Later that same day state authorities charged appellant with armed robbery and placed him in jail to await trial on that charge. One year later, on July 30, 1982, appellant filed a motion to dismiss with prejudice for failure to grant a speedy trial. The state trial court granted appellant's motion to dismiss and released him from custody in August 1982.

On September 16, 1982, a federal grand jury indicted appellant for the same transaction that was the subject of the state

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

prosecution and charged him with forcibly robbing a postal employee of United States Post Office keys, in violation of 18 U.S.C. § 2114. Appellant was arraigned on November 12, 1982. Following denial of pretrial motions for dismissal, expert witness services and suppression of identification testimony, trial began on January 3, 1983, and the jury returned the guilty verdict the next day. This appeal followed.

## I. *Preindictment Delay*

Appellant first argues that the district court erred in denying his motion to dismiss the indictment for prosecutorial delay. Appellant argues that the delay of more than a year between the date of the crime (July 1981) and the federal indictment (September 1982) substantially prejudiced his defense. Appellant argues that crucial defense witnesses became unavailable during the period of delay. In support appellant submitted an affidavit from an investigator from the local public defender's office who had assisted in preparing appellant's defense in the state prosecution. This affidavit stated in pertinent part: "[C]ertain witnesses named by the defendant as being critical to his defense and who were available at the time the original State charge was pending are currently unavailable or unable to be found."

■ Generally, post-indictment or post-accusation delay may violate the constitutional or statutory speedy trial guarantees; however, preindictment delay may violate the due process clause. *United States v. Lovasco,* 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). "A defendant is entitled to dismissal of an indictment where he [or she] shows *actual* prejudice from an *unreasonable* delay on the part of the government. Where actual prejudice is established, the reasons for the delay are balanced against the prejudice shown by the accused." *United States v. Taylor,* 603 F.2d 732, 735 (8th Cir.) (citations omitted; emphasis in original), *cert. denied,* 444 U.S. 982, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

■ Assuming for the purposes of argument that the delay of more than a year between the date of the crime and the filing of the federal indictment was unreasonable,[2] a careful review of the record convinces us that the district court correctly found that appellant did not demonstrate actual prejudice. Appellant has relied solely on the admittedly "real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost.... [T]hese possibilities are not in themselves enough to demonstrate that [appellant] cannot receive a fair trial and to therefore justify the dismissal of the indictment." *United States v. Marion,* 404 U.S. at 326, 92 S.Ct. at 466; *see United States v. Hendricks,* 661 F.2d 38, 40 (5th Cir.1981); *United States v. Taylor,* 603 F.2d at 735.

Nor was there any proof that the delay in bringing the federal indictment was an intentional device to gain tactical advantage over appellant. Appellant does not allege that the deference of the federal authorities to the state prosecution was "purposefully designed so as to give the government 'two bites at the apple.'" *United States v. Mejias,* 552 F.2d 435, 443 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). Because the district court found no showing of actual prejudice, the district

---

**2.** Arguably only the two months delay between the dismissal of the *state* charge and the filing of the *federal* indictment should be attributable to the *federal* government. Cf. *United States v. MacDonald,* 456 U.S. 1, 10 n. 11, 102 S.Ct. 1497, 1503 n. 11, 71 L.Ed.2d 696 (1982) (sixth amendment speedy trial right) ("[A]rrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign."); *United States v. Hendricks,* 661 F.2d 38, 40 n. 1 (5th Cir.1981) (sixth amendment speedy trial right) (state arrest and subsequent federal indictment). *But cf. United States v. Lai Ming Tanu,* 589 F.2d 82, 88–89 (2d Cir.1978) (leaving open question whether sixth amendment speedy trial provision may ever be invoked when a federal defendant who has already been prosecuted in state court for substantially the same offense shows actual prejudice).

court did not consider the reasons why the federal government did not initially prosecute appellant. However, it would appear that the federal government probably decided to leave the prosecution in the hands of the state authorities, perhaps as a matter of efficient allocation of resources. In any case only two months elapsed between the dismissal of the state charge and the filing of the federal indictment. Thus, it would appear that, after learning of the dismissal of the state charge, the federal government acted promptly in bringing the federal prosecution.

## II. *Expert Testimony*

Appellant next argues that the district court erred in denying his motion for expert services. Appellant contends that he should have been allowed expert testimony in the form of a criminologist who would have testified about the inherent inaccuracies of eyewitness identification. Specifically, appellant challenges the district court's rejection of his request for government funds under 18 U.S.C. § 3006A(e) to pay for preparation of a testimonial offer on the subject of scientific evidence relating to perception and memory of eyewitnesses.

■ Admission or exclusion of expert testimony is a matter within the sound discretion of the district court. *United States v. Oliver,* 525 F.2d 731, 737 (8th Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976). We are satisfied that the district court acted well within its discretion when it found the offer in this case was not sufficiently beyond the understanding of lay jurors to satisfy Fed.R.Evid. 702. *See United States v. Amaral,* 488 F.2d 1148, 1153 (9th Cir.1973) (reciting requirements of proper subject and accepted scientific analysis of credibility of eyewitness identification). Thus, we find the district court did not abuse its discretion by denying appellant's request for expert services under 18 U.S.C. § 3006A(e). We do not believe that this expert witness would have assisted the jury in evaluating the robbery victim's perception and subsequent identification of his assailant. Furthermore, the unfair prejudice which might have resulted because of the aura of reliability and trustworthiness that surrounds scientific evidence outweighed any small aid the expert testimony might have provided. *See United States v. Fosher,* 590 F.2d 381, 383 (1st Cir.1979).

## III. *Preindictment Lineup Identification*

Appellant also argues that the district court erred in admitting the preindictment lineup identification. Appellant contends the evidence should have been suppressed for several reasons. First, he argues that because he was denied his constitutional right to counsel at the preindictment lineup identification, the evidence is not admissible against him. Second, he contends that the identification is inadmissible because he was arrested at home by a police officer who did not have an arrest or search warrant or consent to enter. Finally, appellant argues that his warrantless arrest was unlawful because it was not based on probable cause and thus the subsequent preindictment lineup identification is "poisonous fruit" and should have been suppressed. We find all three arguments without merit.

### A. *Right to Counsel*

■ It is firmly established that a defendant's sixth or fourteenth amendment right to counsel attaches only after adversarial judicial proceedings have been initiated. *United States v. Wade,* 388 U.S. 218, 224–26, 87 S.Ct. 1926, 1930–32, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967). The Supreme Court has restricted adversarial judicial proceedings to that time when the government has committed itself to prosecute and a defendant is faced with the prosecutorial forces of organized society. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). An arrest for a crime with which the defendant is eventually charged does not initiate adversarial judicial proceedings, *e.g., Caver v. Alabama,* 577 F.2d 1188, 1195 (5th Cir.1978). Thus, appellant had no constitutional right to counsel at the lineup conducted after his arrest but before he was formally charged.

### B.  *Consent to Enter*

Warrantless arrest in the accused's home is not permissible absent exigent circumstances or consent to enter. *Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 1374, 63 L.Ed.2d 639 (1980). "[T]he consent of one who possesses common authority over the premises ... is valid as against the absent, nonconsenting person with whom the authority is shared." *United States v. Matlock,* 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). We have previously held that the third party consent must be voluntarily given to be valid and binding against the accused. *E.g., United States v. Patterson,* 554 F.2d 852, 854 (8th Cir.1977) (per curiam). Whether the consent is truly voluntary is to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). In examining the record, we fail to discover evidence of an involuntary consent by appellant's mother or sister. While the record is unclear as to whether appellant's mother or sister, or both women jointly, admitted the police officers, nothing in the record indicates that the entrance was made without their consent. The only evidence on the record regarding this issue is testimony from the arresting officers. No express or implied coercion can be found from their testimony. Appellant's mother and sister did not testify. We therefore find appellant's argument without merit.

### C.  *Probable Cause*

Probable cause exists where " 'the facts and circumstances within (the arresting officers') knowledge ... were sufficient to warrant a prudent [person] in believing that the (suspect) had committed or was committing an offense.' " *United States v. Everroad,* 704 F.2d 403, 405–06 (8th Cir. 1983), *citing Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). "The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effect of the facts in the totality of the circumstances." *United States v. Everroad,* 704 F.2d at 406, *citing United States v. McGlynn,* 671 F.2d 1140, 1143 (8th Cir.1982). "[P]robability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).

Our review of a district court's determination of probable cause for arrest is limited by the clearly erroneous standard. *E.g., United States v. Wentz,* 686 F.2d 653, 657 (8th Cir.1982). We conclude that the district court did not err in finding probable cause to arrest appellant. The investigating authorities had been given appellant's physical description by the robbery victim immediately following the incident. Furthermore, the citizen informant accurately communicated to the federal postal inspector the description, name and address of appellant. We believe this information is sufficient to establish probable cause. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Accordingly, the judgment of the district court is affirmed.