**UNITED STATES of America, Appellee,**

v.

**Mark John CHAPMAN, Appellant.**

**No. 89–5482.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1990.

Decided May 8, 1990.

Rehearing and Rehearing En Banc Denied June 22, 1990.

Larry E. Reed, Minneapolis, Minn., for appellant.

Jeffrey S. Paulsen, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BEAM, Circuit Judge, and HANSON *, Senior District Judge.

HANSON, Senior District Judge.

Appellant Chapman seeks reversal of his convictions for bank robbery and related offenses asserting that the District Court, the Honorable Diana Murphy, erred in denying his motion to suppress evidence seized as a result of his arrest. Chapman's suppression motion is based on three arguments. He asserts that: (1) the government had insufficient probable cause to arrest him; (2) the government acted illegally in arresting him without a warrant inside a residence where he had been staying for four days; and (3) the government illegally seized one of his bags from the residence. Appellant also asserts the district court erred in denying his request for a hearing on his mental condition prior to sentencing. We affirm the convictions, but remand to the district court for a determination of whether appellant is entitled to a hearing on his mental condition.

### The Suppression of Evidence

At the time of his arrest appellant had been linked to the bank robbery in question by a significant amount of evidence—the most damaging being the implicating confession of his co-defendant Leonard Griffin. *See United States v. Leonard Griffin and Mark Chapman*, No. 4–89–52, Report and Recommendation of Magistrate, slip op. at 5–6 (D.Minn. April 4, 1989), *adopted* by District Court, No. 4–89–52 (D.Minn. May 15, 1989). There was also

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

evidence that a car he had stolen on the day of the bank robbery had been seen at the bank shortly before the robbery, and that one of the bank robbers had fled to a hotel where Chapman and an acquaintance had a room rented. *Chapman,* Report and Recommendation, slip op. at 3–4. We agree with the district court that the officers had information "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Thus, probable cause to arrest was present.

■ Similarly, we find the government did not violate appellant's rights by arresting him without a warrant. "Warrantless arrest in the accused's home is not permissible absent exigent circumstances or consent to enter." *United States v. Purham,* 725 F.2d 450, 455 (8th Cir.1984). The government had consent to enter the house in which Chapman was located. The officer who arrested Chapman was given permission to enter the house and to search for Chapman by both the owner of the house and by the owner's daughter. *Chapman,* Report and Recommendation, slip op. at 7–8. There is no evidence that the consent was involuntary. Because these findings are not clearly erroneous we find that the warrantless arrest inside the residence was permissible. *See Purham,* 725 F.2d at 455 (consent by mother/and or sister for police to enter and arrest defendant, a third resident of the premises, was valid where consent was found to be voluntary).

■ The seizure of appellant's bag from the residence was also legal. The owner of the house gave the police authority to remove the bag from the house. *Chapman,* Report and Recommendation, slip op. at 8. The bag was open and unzipped when it was removed and money with red dye on it, similar to that stolen from the bank, was visible from the outside of the bag. *Id.* The officers did not search the bag until after Chapman had given his consent to do so. *Id.* at 9. These actions did not violate appellant's rights. Thus, because none of the actions appellant challenges with regard to his motion to suppress were illegal,

the district court's denial of the motion is affirmed.

## The Mental Status Hearing

■ The last issue we address is the district court's denial of appellant's motion for a hearing to determine his mental condition prior to sentencing. A "court shall grant" a hearing to determine the mental condition of a convicted defendant "if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244 (1988). If a hearing is required, the court must then make a determination, after the hearing, of whether the convicted defendant is suffering from a mental disease or defect such that he should be committed to a suitable facility for care or treatment in lieu of imprisonment. 18 U.S.C. 4244(d). If the court finds such treatment necessary it must commit the defendant to the custody of the Attorney General for suitable care under a provisional sentence of imprisonment. *Id.*

In this case appellant's attorney made a motion for such a hearing two days prior to sentencing asserting that the attorney had just learned that: appellant was under observation for suicidal attempts in a psychiatric unit of the Oak Park Correctional Facility; appellant had attempted to commit suicide shortly after his convictions in this case; and, appellant had attempted to commit suicide on more than one previous occasion. The government resisted the motion, arguing that it was untimely, and asserting that appellant's potential mental condition could be addressed without such a hearing by recommending to the Bureau of Prisons that he begin his sentence at a facility with adequate mental evaluation and treatment facilities.

The district court entered the following ruling:

Well, the gist of the motion is that it requests moving the court for an order to determine whether or not the defendant should be confined in a facility

which can provide the care and treatment for any mental disability that he may have at this time. And I believe that after looking at the statute and all of the facts and circumstances here, that there's no reason why it's been shown why the court shouldn't proceed with sentencing of Mr. Chapman. But the court will recommend to the Bureau of Prisons orally here, and also communicate when I'm outside the courtroom, the need to have Mr. Chapman placed in an institution where he can have an examination and see whether he needs particular treatment for any mental disability. * * *

So my plan is to recommend to the Bureau of Prisons that Rochester be utilized and that an examination there be conducted. So, in a sense, I'm granting the motion in the sense that it's to determine the present mental condition of the defendant. However, perhaps, to the extent that the Court is not continuing the sentencing itself—if that's what's called for in the motion, I would be denying that aspect of it. * * *

Transcript of Sentencing Proceedings of Mark John Chapman, pp. 3–4, (Aug. 25, 1989).

The ruling is problematic because it is not clear that the court complied with the statute. The decision of whether or not to grant a hearing to determine present mental condition is not discretionary if the court "is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect" for which he needs care and treatment in a suitable facility. 18 U.S.C. § 4244. The statute requires that in such a situation "the court shall order such a hearing". *Id.* However, in this case the ruling quoted above establishes that the court denied such a hearing after finding a "need to have Mr. Chapman placed in an institution where he can have an examination and see whether he needs particular treatment for any mental disability."

It is possible that the "need" found by the court did not rise to the level of a finding of the "reasonable cause to be-lieve" which triggers the right to a hearing. However, it is also possible that the court found such a "reasonable cause to believe" but was under the mistaken impression that it could simply turn the defendant over to the Bureau of Prisons and give them the responsibility of insuring that appellant received appropriate treatment. Unfortunately, we cannot determine which of these interpretations accurately reflects the court's actions. Thus, because the latter action would be error, we find that we must remand the case back to the district court to insure compliance with the statute.

The government argues that there is no error in the court's action because appellant's motion for a hearing was not filed within ten days of his conviction as required by the statute. 18 U.S.C. 4244(a). This argument fails because the statute also provides that a court, at any time prior to sentencing, "shall order such a hearing on its own motion" if it finds the reasonable cause discussed above. *Id.* Thus, the timeliness of appellant's motion is irrelevant because the court had a mandatory duty to grant a hearing at any time prior to the sentencing at which it had reason to believe appellant may have been suffering from a mental condition for which he needed "care or treatment in a suitable facility" *Id.*

The government also argues that appellant has no right to relief because he has not shown this court that he has failed to receive sufficient treatment, during his incarceration, for any mental condition he may have that requires such treatment. There is no such requirement in the statute. Instead, § 4244 lays out a specific procedure, which must be followed by the courts, designed by Congress to insure that a convicted person suffering from a mental disease or defect be evaluated and treated at an appropriate facility. The appellant has shown this Court that the procedure may not have been complied with. Nothing in the statute or in our precedent requires the defendant to show anything more.

It may be that a defendant who established a violation of this statute could be

denied relief on mootness grounds if the government established that the defendant was receiving all necessary treatment. We do not reach this issue in this case, however, because the government has made no such showing. Indeed, the record establishes that the Bureau of Prisons did not comply with Judge Murphy's request to send Chapman to Rochester. Further, there is no indication of whether or not Chapman has ever received the examination which Judge Murphy found that he needed.[1]

Accordingly, we remand the case back to the district court for a determination of whether the court "is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." If the court makes such a finding it shall then comply with the remaining provisions of 18 U.S.C. § 4244. The district court may make this determination *nunc pro tunc* if such action is appropriate.

Appellant's convictions for bank robbery and the related offenses he was charged with are affirmed, but the case is remanded to the district court for an appropriate determination of mental condition under 18 U.S.C. § 4244.

---

1. The clarity of the statute's denial of discretion to a sentencing court, once it has made the requisite findings, makes it unnecessary to review the legislative history of the statute in a search for its purpose. We observe, however, that the inability of a district judge to require the Bureau of Prisons to send a convicted defendant to a specific prison is one justification for the statute, as the procedures mandated by § 4244 insure that a convicted defendant identified by the court as suffering a mental condition requiring treatment will be directed to an appropriate facility.