74 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ramon ARIAS, Defendant-Appellant.
 No. 94-6143.
 United States Court of Appeals, Sixth Circuit.
 Jan. 2, 1996.
 
 Before: JONES, DAUGHTREY, Circuit Judges, and GIBSON, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Ramon Arias appeals his jury conviction and sentence for conspiracy to possess and possession with intent to distribute cocaine base. For the following reasons we affirm his conviction and sentence.
 
 I.
 
 2
 On February 3, 1994, Celestine Debnam arrived in Louisville, Kentucky on a flight from Newark, New Jersey. When Debnam deplaned, detectives recognized her as a suspect in a drug investigation and followed her through the airport. The detectives watched Debnam as she met Derek Scott at the doors of the airport and followed him towards a jeep parked at the curb. Defendant Ramon Arias was driving the jeep.
 
 
 3
 Before Debnam and Scott reached the jeep, one of the detectives approached her, identified himself as police officer, and asked to see her plane ticket. Debnam identified herself as Eva Miller and produced a ticket bearing that name. The officers then requested permission to search her bag. She consented. During this search, officers found evidence of Debnam's true identity and arrested her for falsely identifying herself to police officers. In a second search, incident to her arrest, the officers found 498.48 grams of cocaine. Later in an interview, Debnam told the police that she made the round trip to Newark under the direction of Arias. When asked where Arias may have gone, Debnam and Scott answered that he probably went to a residence in the 700 block of 22nd Street after he left the airport. Based upon the information obtained from Debnam and Scott as well as from surveillance, officers of the Louisville and Jefferson County Metro Narcotics Unit were called to the 700 block of 22nd Street. The police arrived at the residence of Donna Moore-Feliciano at the same time as one of Moore-Feliciano's friends. The officers asked the friend to knock on the door and inform Ms. Moore-Feliciano that the police were present. Moore-Feliciano answered the door, and the police entered the apartment and told her they were looking for Arias. Arias was found hiding in the closet. The police brought him out and arrested him at gunpoint.
 
 
 4
 After his arrest, Arias consented to a search of his apartment and signed a standard consent to search form. The officers drove Arias to his home and searched his apartment. Among the items seized were personal papers with Arias' various aliases and two sets of digital scales.
 
 
 5
 Police officers located and, without a warrant, seized Arias' jeep for an intended forfeiture. At the impoundment lot, officers conducted an inventory search of the vehicle and seized various items, including a cellular telephone and some of Arias' personal papers.
 
 
 6
 Arias was indicted for conspiracy and possession with intent to distribute approximately 500 grams of cocaine base. Before his trial, Arias moved to suppress the evidence seized from his apartment. During the trial, he moved the court to suppress the evidence seized from his jeep. The district court denied both motions as well as Arias' motion for a mistrial made after witnesses inadvertently referred to evidence that was excluded under a motion in limine.
 
 
 7
 Arias was convicted and sentenced. He now appeals the denial of his motions as well as issues surrounding his sentencing.
 
 II.
 
 8
 The first issue Arias raises in his appeal is whether the district court erred by admitting the evidence seized from Arias' apartment without a warrant. We review a district court's factual findings on suppression issues for clear error and review conclusions of law de novo. United States v. Baro, 15 F.3d 563, 566 (6th Cir.), cert. denied, 115 S.Ct. 285 (1994). A district court's findings with respect to voluntariness of consent are questions of fact. United States v. Jones, 846 F.2d 358, 360 (6th Cir.1988).
 
 
 9
 Arias argues that his arrest at Donna Moore-Feliciano's apartment was illegal, and therefore the fruits of this illegal arrest, including the search of his apartment, should have been suppressed. See United States v. Blanco, 844 F.2d 344, 349 (6th Cir.), cert. denied, 486 U.S. 1046 (1988). Although executed without a warrant, Arias' arrest was lawful because it was supported by probable cause. Co-conspirators Scott and Debnam had provided the police with information regarding Arias' participation in the drug conspiracy. Accordingly, the facts and circumstances within the arresting officers' knowledge " 'were sufficient to warrant a prudent man in believing that [Arias] had committed or was committing an offense.' " See Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir.1995) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).
 
 
 10
 Arias next contends that the arrest was unlawful because the officers entered the home of Ms. Moore-Feliciano without a warrant. Arias fails to recognize, however, that Ms. Moore-Feliciano knew the police were at the door, and the police did not enter the residence until she opened the door from the inside. Because they entered the residence with Ms. Moore-Feliciano's consent, the officers did not violate Arias' Fourth Amendment rights by arresting him in Moore-Feliciano's home. See United States v. Chapman, 902 F.2d 1331, 1333 (8th Cir.1990) (holding Defendant's Fourth Amendment rights not violated by arrest after police obtain owner's permission to enter a residence).
 
 
 11
 Arias asserts that even if his arrest was lawful, an evaluation of the totality of the circumstances demonstrates that his consent to a search of his apartment was coerced and not voluntary. See United States v. Taylor, 956 F.2d 572, 577 (6th Cir.) (en banc) (voluntariness of consent to search is to be determined from the totality of the circumstances), cert. denied, 113 S.Ct. 404 (1992). Arias contends that: (1) the effect of being in police custody; (2) his language barrier; (3) the poor explanation of and improper witnessing of the consent form; and (4) the officers' forced entry into Arias' residence were all factors that precluded voluntary consent on his part. We disagree.
 
 
 12
 Testimony at the suppression hearing revealed that Arias agreed to sign the consent form after he told the officers they would not "find anything." At the suppression hearing, a police officer testified that "[he] made sure [Arias] realized what he was doing" when Arias read over and signed the consent form. J.A. at 240. The consent form that Arias executed stated that he did so "knowing that [he had] a constitutional right to refuse a search of [his] premises." J.A. at 946. The officer further testified that Arias appeared to understand the form. J.A. at 241. Finally, when the officers realized Arias did not have keys to the apartment, Arias gave his permission for them to pry open the door with a screwdriver. Although Arias argues a language barrier prevented him from giving knowing consent, none of the officers indicated Arias had difficulty understanding common English. One officer testified, based on his conversation with Arias, that he thought Arias was "very fluent." J.A. at 268. We believe that this "clear and positive testimony" demonstrates that Arias' consent was not tainted. See Taylor, 956 F.2d at 577 (quoting United States v. Williams, 754 F.2d 672, 675 (6th Cir.1985).
 
 
 13
 In a related argument, Arias claims that items were seized from rooms in the apartment over which he did not have sufficient dominion or control to authorize a search. A person who possesses "common authority over or other sufficient relationship to the premises" may consent to a search of a residence. Riley v. Gray, 674 F.2d 522, 528 (6th Cir.1982) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)).
 
 
 14
 The touchstone of common authority is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their number might permit the common area to be searched.
 
 
 15
 Id.
 
 
 16
 The record indicates that Arias exercised sufficient authority to consent to the search. Arias' belongings were found throughout the apartment. No one else was in the apartment, and Arias never informed the officers that he occupied only certain rooms of the small apartment. Outside of a telephone bill that was in name of Derek Bell, the officers would have no reason to doubt Arias' dominion over the entire apartment. This is especially true in light of Arias' failing to identify any one who also lived in the apartment. Based on this evidence, we will not disturb the district court's finding that Arias consented to a search of the entire apartment.
 
 III.
 
 17
 Arias also appeals the district court's admission of evidence seized from his jeep after it was impounded by the police. After Arias was arrested, the police towed his vehicle to an impound lot to be held for future forfeiture. During an inventory search, a police officer recovered Arias' cellular telephone and various personal papers that revealed Arias' use of aliases.
 
 
 18
 The trial court concluded the seizure of the vehicle was legal as incident to an intended forfeiture. The court found, based on the earlier arrests and statements by Arias' co-conspirators that the officers had probable cause to believe the vehicle was used or was intended to be used in cocaine trafficking.
 
 
 19
 A finding of probable cause provides a basis for seizing a vehicle for impoundment purposes. See Autoworld Specialty Cars, Inc. v. United States, 815 F.2d 385, 389 (6th Cir.1987). After reviewing the evidence de novo, see United States v. Wright, 16 F.3d 1429, 1433 (6th Cir.), cert. denied, 114 S.Ct. 2759 (1994), we agree with the trial court's finding of probable cause and hold that the towing of Arias' vehicle to the impoundment lot and the subsequent inventory search did not violate his rights under the Fourth Amendment.
 
 IV.
 
 20
 Pursuant to Arias' motion in limine, the district court excluded evidence of prior drug trafficking trips that Arias arranged. The court held the government could introduce evidence relating only to Arias' February 3, 1994 drug activities. Despite the court's ruling, on three instances prosecution witnesses testified vaguely to previous drug related activities.
 
 
 21
 The first instance of which Arias complains occurred during defense counsel's cross examination of Co-conspirator Derek Scott. When asked for clarification of a statement in his plea agreement about transporting drugs for Arias, Scott stated, "[t]hat was past tense, [t]hat was last year." J.A. at 564.
 
 
 22
 The second two references occurred during the government's direct examination of Co-conspirator Debnam. She testified that Arias "wanted [her] to go out of town for him again," J.A. at 632 (emphasis added), and when asked how she intended to get home from the airport on the day she returned, she stated "sometimes it would be Mr. Arias. Mr. Arias was there sometimes--sometimes Mr. Scott would come by himself." J.A. at 640-41. Arias objected to this testimony and moved for a mistrial. The court denied Arias' motion on the grounds that the government had instructed the witness to testify only on the events of February 3, 1994, and these statements represented a mere slip of the tongue that did not warrant a mistrial. The court again admonished the jury to consider only evidence of the February 3, 1994 incident charged in the indictment.
 
 
 23
 "We review the denial of a motion for mistrial for an abuse of discretion." United States v. Chambers, 944 F.2d 1253, 1263 (6th Cir.1991), cert. denied, 502 U.S. 1112 (1992). In evaluating the denial of a motion for mistrial for an abuse of discretion, our primary concern is fairness to the defendant. United States v. Forrest, 17 F.3d 916, 919 (6th Cir.), cert. denied, 114 S.Ct. 2115 (1994). We consider the following factors: whether the remarks were unsolicited; whether the line of questioning was reasonable; the clarity and forcefulness of any limiting instructions; any bad faith on the part of the government; and whether the testimony is a minor or significant part of the total evidence presented against the Defendant. Forrest, 17 F.3d at 920 (citations omitted).
 
 
 24
 Applying these factors to this case, we find that the trial court did not abuse its discretion in denying Arias' motion. First, it is clear that the remarks by both witnesses were unsolicited, and the questions that elicited the remarks were reasonable because they were phrased only in terms of the February 3, 1994 events. Second, the court gave a curative instruction regarding each witness' testimony. Third, there is no evidence of the government's bad faith. To the contrary, the government attorney instructed the witness to testify only about the events that took place on February 3, 1994, and instructed the witness again after she made the statements at issue. Finally, any evidence of past events was minimal compared to the direct testimony of Arias' activities in coordinating the February 3, 1994 drug activities and was unlikely to change the outcome of his case. Accordingly, we affirm the district court's denial of Arias' motion for a new trial.
 
 V.
 
 25
 Arias also contends the trial court erred by admitting irrelevant evidence that was unfairly prejudicial. Arias submits that the evidence regarding his immigration status, his history of large cash transactions, and his use of aliases was improperly admitted. "The exclusion of evidence on the grounds of relevancy is within the discretion of the district court," and we reverse only when such discretion is abused. United States v. Williams, 952 F.2d 1504, 1519 (6th Cir.1991).
 
 
 26
 We find no error in the district court's conclusion that the above mentioned evidence is relevant to Arias' possible participation in a drug conspiracy. This conclusion calls for no more than an exercise in common sense. Furthermore, we find no indication in the record that the prejudicial impact of this evidence outweighed its probative value and warranted its exclusion.
 
 VI.
 
 27
 Arias raises several arguments concerning the district court's calculation of his sentence. We review a district court's factual findings in relation to the application of the Sentencing Guidelines under a deferential "clearly erroneous" standard of review. See 18 U.S.C. Sec. 3742; United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 
 28
 Arias first argues the court should not have taken into account cocaine that was attributed to the conspiracy but not recovered from Debnam on February 3. Debnam was arrested in possession of 498.48 grams of cocaine, and pursuant to the relevant conduct provision of the Sentencing Guidelines, Sec. 1B1.3(a)(2), the court concluded that during the time period of the conspiracy alleged in the indictment, Arias was accountable for at least another 1.5 grams of cocaine and adjusted his base level upward from 34 to 36 (reflecting a difference in a below 500 grams offense and an above 500 grams offense).
 
 
 29
 In determinations of relevant conduct for sentencing purposes, the prosecution must prove only by a preponderance of the evidence that the conduct occurred. See United States v. Gonzales, 929 F.2d 213, 216 (6th Cir.1991). The prosecution met this burden in Arias' case. At the sentencing hearing, Co-conspirator Debnam testified that she had made four previous trips to bring cocaine back to Louisville. J.A. at 885-907. From Debnam's estimates, a detective determined that Debnam transported approximately 5 ounces or 140 grams of cocaine on each of her four trips. J.A. at 901-08. Based on this uncontroverted testimony, the trial court's finding that the conspiracy involved an amount greater than 500 grams of cocaine was not clearly erroneous and will not be disturbed.
 
 
 30
 Arias also contests the district court's finding that he was an organizer or leader of a criminal activity involving five or more participants, thus subjecting him to an enhancement under Sentencing Guideline Sec. 3B1.1. At sentencing, the government bears the burden of proving by a preponderance of the evidence the factors supporting an enhancement. United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991). Arias argues the government proved only that the other participants were suppliers or purchasers, who can not be counted when determining the number of persons involved in a criminal enterprise. See United States v. Gibson, 985 F.2d 860, 866 (6th Cir.), cert. denied, 113 S.Ct. 2981 (1993). According to Arias, the government proved only that Arias was an organizer under Sec. 3B1.1(c) and is subject to no more than a three level increase.
 
 
 31
 The testimony adduced at trial showed that Arias masterminded the operation. He recruited Debnam as a courier, supplying her with airline tickets and buy money, and Scott as an assistant to transport Debnam to and from the Louisville airport. The testimony also revealed with respect to the February 3, 1994 transactions, that Arias arranged for Debnam to meet and stay with a woman in New Jersey named Marti and to meet with another unnamed woman to pick up the cocaine. Marti counted the money that Debnam brought and paid the woman who supplied the cocaine. After the sale, Marti called Arias to confirm that the deal had proceeded as scheduled and kept the cocaine in her possession until Debnam left the following morning. Evidence was also presented that Arias also arranged for another individual named Hector to pick up Debnam from the airport on three of her drug trafficking trips.
 
 
 32
 Even if we agree with Arias' categorization of the unnamed woman as a supplier, the other participants, Arias, Debnam, Scott, Marti, and Hector still number five. Therefore, we must hold that the district court did not err in finding Arias was a leader or organizer subject to the enhancement.
 
 
 33
 Finally, Arias challenges the 100 to 1 crack penalty ratio on the grounds that it violates the Equal Protection Clause of the Fifth Amendment by disparately impacting minorities. During the sentencing hearing, Arias attempted to introduce empirical data of the disparate impact by requesting judicial notice of statistics that appeared in a district court case that declared the crack cocaine sentencing guidelines unconstitutional. See United States v. Clary, 846 F.Supp. 768, 773 (E.D.Mo.1994), rev'd, 34 F.3d 709 (8th Cir.1994), cert. denied, 115 S.Ct. 1172 (1995). The district court declined to take notice of the statistics on the ground that the court lacked sufficient background information to accept the statistics into evidence and instead took notice only of the fact that the Clary court used such statistics. Arias' method of attempting to introduce the statistics does not meet the requirement of setting forth empirical data. We believe that on the record of this case and the lack of foundation for the statistics, the district court was justified in declining to take judicial notice of the proffered statistics.
 
 VII.
 
 34
 For the foregoing reasons, we AFFIRM Arias' conviction and sentence.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation