**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Craig PATTERSON,**
**Defendant–Appellant.**

**No. 97–4385.**

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1998.

Decided Aug. 4, 1998.

**ARGUED:** Stanley Franklin Hammer, Wyatt, Early, Harris & Wheeler, L.L.P., High Point, North Carolina, for Appellant. John Warren Stone, Jr., Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

Before WIDENER and LUTTIG, Circuit Judges, and DOUMAR, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Senior Judge DOUMAR wrote the opinion, in which Judge WIDENER and Judge LUTTIG joined.

## OPINION

DOUMAR, Senior District Judge:

Craig Patterson was indicted for bank robbery, armed bank robbery, use of force in avoiding apprehension for bank robbery and use of a firearm in connection with a crime of violence in violation of 18 U.S.C. §§ 2113(a) & 2; 2113(d) & 2; 2113(e) & 2; and 924(c)(1) & 2, respectively. The jury found him guilty on all four counts. The Court sentenced Patterson to 120 months on Counts I–III (the bank robbery counts) and 120 months on Count IV which is to run consecutively with the consolidated sentence on Counts I–III. Patterson has appealed arguing that the district court erred (1) in not suppressing the items seized from his Honda, (2) in admitting pager records from the pager seized from the Honda, (3) in refusing to give an eyewitness jury instruction in the manner set forth in *United States v. Holley*, 502 F.2d 273 (4th Cir.1974), and (4) in refusing to define reasonable doubt and prohibiting defense counsel from defining reasonable doubt during closing argument. The Court has considered these arguments and affirms the judgment of the district court.

Two masked men robbed the Central Carolina Bank in Summerfield, North Carolina on November 8, 1996. After being caught by the police, Tedrick Greene confessed that he was one of the robbers. According to Greene, Appellant Patterson was his co-par-

ticipant in the robbery of the Central Carolina Bank.

While Greene was being interviewed by Detective Church after his apprehension on the afternoon of the robbery, he implicated Patterson as his co-participant. He gave the police Patterson's address and told them that Patterson drove a navy blue Honda with 30 day plates. Greene told them that the two had used the Honda to drive to a Bi–Lo where they switched to an Audi which they drove to the bank.

Detective J.M. Landers was dispatched to Patterson's address on Cambourne Street. While Detective Landers was at the address, he was contacted by Detective Church who asked him if he saw a Honda Civic at the residence. Landers said he saw a Honda parked almost directly in front. Church then called Sineath Motor Company and had the car towed to the impound lot. The car was towed within an hour and searched the next day at the lot.

The car was processed and inventoried by Stormy Cross, a Guilford County evidence technician. Cross found several items in the car including a blue pager and Tedrick Greene's identification card. At trial, Cross testified that she recorded the entries on the pager and the last call reflected an entry of 854–8997 followed by a "9" with nine "1's". The date of the entry was not recorded. The phone number was Patterson's.

Several bank employees testified at trial, but none of them identified Patterson as an assailant although they gave a general description of Greene's co-perpetrator as between five feet five and five feet seven inches tall, weighing between 135 and 150 pounds, and wearing a yellow sweater or sweatshirt.

Greene testified at Patterson's trial that the two had robbed the bank together. In addition, he testified that the day before, he and Patterson stole a red Audi and a gray Isuzu Rodeo which they planted at a Bi–Lo supermarket and at Summerfield Elementary School, respectively, to aid them in their escape.

Greene also testified that, Patterson told Greene at their arraignment that, on the day of the robbery, he (Patterson) went to the elementary school and tried to use the phone but the power was out at the school so he left in the Isuzu Rodeo.

Tyrone Hooks, who was Patterson's roommate at the time of the robbery, also testified at trial. He testified to a number of details of the robbery which he stated he learned from Patterson. He also testified that on the day of the robbery, Patterson told him that he had left Greene in Summerfield and needed to rescue him. He further testified that Patterson and three friends, Pomoy, Xay and J.B. Henley, drove toward Summerfield. Hooks stayed in Greensboro and when he learned that Greene had been caught, he paged the four men on Xay's beeper and entered a "911" message as a signal for them to return home.

Hooks testified that he and Patterson jumped out of their apartment window when a police officer arrived at the apartment. Hooks also testified that Patterson had manufactured an alibi for the robbery and would claim that he was with J.B. Henley on the morning of November 8, 1996.

Hooks also admitted while testifying that he stands five feet seven inches tall and weighs 160 pounds, that he had participated in robberies with Greene in which he had used an Intertech.22 (the gun used by the perpetrator in this case, believed to be Patterson) and in which he had driven Patterson's Honda.

Three women who were present at Summerfield Elementary School on the day of the robbery testified to having seen an African American male at the school on the afternoon of the robbery. One of the witnesses identified Patterson in court. Jennifer Bolton testified that she observed a young man enter the school office and request to use the phone. Bolton picked Patterson out of a photo spread. She admitted on cross, though, that she had read about the robbery in the newspaper on November 9 and the same photograph of Patterson which was in the newspaper was used in the photo lineup. At trial, she testified that Patterson "kind of looks like" the man she saw at school.

Donna Yost, who is a bus driver for Guilford County Schools, was sitting in her parked car on the grounds of the school on the afternoon of the robbery when she saw a young African American male enter one of the cars in the parking lot. She described the car as a "Blazer-type" vehicle that began with an "R." Yost had been in her car working crossword puzzles and listening to the radio. The windshield wipers were on at the time. She identified Patterson in two photo lineups: in one he was wearing glasses, in the other he was not. His was the only photo that appeared in both lineups. She testified at trial that she was "pretty certain" that the defendant was the person she saw at the school.

Sabrina Thorton was also at the school on November 8, 1996. She testified that while she was in the school office she saw a young African American male come into the school and that he had a blue pager. She was not able to identify the man in a photo lineup, and she did not attempt to identify him in court.

Patterson presented alibi evidence through Linda Henley who testified that she saw Patterson at her house in Greensboro between 11:50 a.m. and 12:05 p.m. on November 8, 1996. She testified that Summerfield is a twenty minute drive from her house. The robbery occurred at approximately 11:40 a.m.

## ANALYSIS

### A. Seizure of Patterson's Honda

■ Patterson first contends that the district court erred in denying his motion to suppress the items seized from his Honda. Patterson argues that probable cause did not exist to seize the vehicle and that even if probable cause existed there were no exigent circumstances preventing the officers from obtaining a search warrant.

A district court's finding of probable cause is reviewed *de novo*. *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir.1996). The reviewing court "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

The district judge stated in his oral order denying the motion to suppress that there was very thin evidence of probable cause to *search* the vehicle because there were no guns or money unaccounted for. The judge found, however, that there was probable cause to seize the vehicle as "an instrumentality or evidence of the crime."

Patterson bases much of his argument regarding the alleged lack of probable cause on cases involving corroborated and uncorroborated statements made by informants. What Patterson fails to address is that the "informant" in this case was a co-participant in the robbery. A review of cases from this and other circuits reveals that courts generally apply a different standard to a co-participant than to other, more typical informants. *See Craig v. Singletary*, 127 F.3d 1030 (11th Cir.1997) (en banc) (holding that a co-defendant's confession is sufficient to be the basis for probable cause); *United States v. Lim*, 984 F.2d 331, 337 (9th Cir.1993) (holding that probable cause for an arrest existed where the defendant had been observed acting nervous after deboarding a plane, his co-defendant indicated that drugs found on him belonged to the defendant and a flight itinerary carried by the codefendant implicated the defendant); *United States v. Chapman*, 902 F.2d 1331, 1332–33 (8th Cir.1990) (holding that probable cause existed where there was a significant amount of evidence to link a suspect to a bank robbery, "the most damaging being the implicating confession of his co-defendant"); *Thomas v. Leeke*, 393 F.Supp. 282, 286 (D.S.C.1975) (noting that police had probable cause to charge an individual with robbery based on his co-defendant's admission to the police that the two of them had robbed a particular store).

The case most analogous to the one at bar is *Craig v. Singletary*. 127 F.3d 1030. In *Craig*, the Eleventh Circuit, sitting en banc, ruled that the requirements for probable cause were satisfied based on the testimony of a co-perpetrator. The *Craig* court held that when a codefendant has admitted guilt to the core crime, there is enough indication

of "reasonably trustworthy information" to meet the requirement of probable cause. *Id.* at 1045. The court held that this was true even where the confessing co-defendant suggests that the other codefendant committed a more serious or blameworthy act than the confessing co-defendant. *Id.*

Perhaps the most important aspect of the Eleventh Circuit's ruling in *Craig* is the underlying reasoning for its holding. The *Craig* court stated that, because for the past forty years it has held that the uncorroborated testimony of a co-conspirator or accomplice is sufficient to prove guilt beyond a reasonable doubt, it would be anomalous for it to hold that the confession of a codefendant is insufficient to establish probable cause. *Id.* at 1044–45.

This Circuit has also held that the testimony of a co-defendant standing alone and uncorroborated is sufficient to sustain a conviction. *United States v. Burns,* 990 F.2d 1426, 1439 (4th Cir.1993) (calling this proposition "settled law"); *United States v. Clark,* 541 F.2d 1016, 1018 (4th Cir.1976) ("Although the testimony of an accomplice should be examined with care and received cautiously, it is sufficient to sustain a conviction, even though uncorroborated, if it convinces a jury of the defendant's guilt beyond a reasonable doubt."). This Court agrees with the Eleventh Circuit that it would be contradictory to allow a defendant to be convicted based on the uncorroborated testimony of his coperpetrator while refusing to find that the same statement would be sufficient to support probable cause.

■ Furthermore, this Circuit has stated that when an informant is giving testimony in hopes of being treated favorably, there is an indicia of reliability because the individual has nothing to gain from lying. *United States v. Miller,* 925 F.2d 695, 699 (4th Cir. 1991). The Supreme Court has noted that an informant's statement has an indicia of reliability when it is self-incriminating:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their

own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.

*United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *see also United States v. Lace,* 669 F.2d 46, 48–49 (2d Cir.1982). These assertions would hold true for a co-defendant just as they would for an informant.

A co-participant would, of course, have to be able to give accurate information about what happened during the crime and leading up to it. Beyond that, however, "unless it is incredible or contradicts known facts to such an extent [that] no reasonable officer would believe it, a co-defendant's confession that he and the suspect committed the crime," *Craig,* 127 F.3d at 1045–46, and used certain instrumentalities, supplies probable cause for arrest and seizure. Accordingly, the Court holds that there was probable cause to seize Patterson's Honda based on Greene's statement that Patterson participated in the robbery with him and that the two of them used Patterson's vehicle as transportation during the robbery.

■ Patterson contends that even if there was probable cause to seize the Honda there were no exigent circumstances excusing the warrant requirement. Patterson relies heavily on *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), in which the Supreme Court held unlawful the seizure of a defendant's car from his driveway. This case differs from *Coolidge* in that Patterson's car was parked on a public street. Other jurisdictions have held that a vehicle which has been used in a robbery may be seized without a warrant as evidence or as an instrumentality of a crime, particularly when it is parked on a public street. *United States v. Bagley,* 772 F.2d 482, 491 (9th Cir.1985) ("We now hold that the existence of probable cause alone justifies a warrantless search or seizure of a vehicle lawfully parked in a public place."); *United States v. Shye,* 473 F.2d 1061, 1065 (6th Cir.1973) ("Alternatively, seizure and subsequent search of the automobile can be justi-

fied on the ground that the car itself constituted evidence or an instrumentality of the crime, was parked in a public way knowingly exposed to the public, and thus was subject to impounding by law enforcement agents with probable cause to believe that it could be used in a trial of the suspects."). The inventory search policy of Guilford County, North Carolina, where the robbery took place, permits such a seizure as well:

> 14.3.3   Vehicles Used in Criminal Activity
>
> When an officer has probable cause to believe that a vehicle contains evidence of a crime or was used in a criminal act, he will have the vehicle towed and stored as evidence.

Moreover, this case can be distinguished from *Coolidge* based on timing. In *Coolidge*, the officers had been investigating the defendant for weeks before going to his residence and knew that they would want to seize his car. *Id.* at 471, 91 S.Ct. 2022. The Sixth Circuit made this distinction in its ruling in *United States v. Shye:*

> We do not rely on the movability of automobiles to justify this warrantless search, but instead on the existence of exceptional circumstances which because of the imperative time excuse obtaining prior judicial approval in very narrowly defined situations. The lengthy pre-seizure surveillance in *Coolidge,* as well as the forced removal of the suspect's wife from her house and the stationing of police guards at the dwelling, established lack of need for immediate action by police.

473 F.2d at 1065 (citation omitted). Accordingly, the Court holds that it was not necessary for the police to obtain a warrant to seize the Honda in this case.*

### B.   *Admission into Evidence of the Pager Records*

■  Patterson next argues that the pager records, which showed the time but not the date of the final entry, should not have been admitted into evidence. The standard of review for evidentiary rulings is abuse of dis-

cretion. *United States v. ReBrook,* 58 F.3d 961, 967 (4th Cir.1995).

The final entry on the pager found in Patterson's car was recorded at 2:53 p.m. and contained Patterson's home phone number and the number "9" followed by nine "1's". There were no dates associated with the entries on the pager. Patterson argues that the record of the final message left on the pager was admitted in violation of Rule 901 of the Federal Rules of Evidence because the lack of a date "does not adequately demonstrate the date of the alleged call, or that the pager called was connected with defendant." Appellant's Brief at 27.

Rule 901, however, only requires that there be "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). Patterson is correct that the lack of a date does not demonstrate the date of the alleged call. Although it is an inference that the Government probably hoped would be drawn, the Government made no effort to elicit testimony that the final entry was recorded on the day of the robbery. In fact, the Government elicited on direct examination that there was no date associated with the time for the last entry on the pager. In addition, although Hooks testified that he had called Xay's pager, not Patterson's, this is a discrepancy to be dealt with by the attorneys in closing argument, not by Rule 901.

Furthermore, the lack of a date does not affect whether a connection was made between Patterson and the pager. It was found in his car, thus there was sufficient evidence to connect it with him. Accordingly, the Court finds that the district judge did not abuse his discretion in admitting testimony regarding the pager records.

### C.   *Eyewitness Instruction*

■  Patterson's third assignment of error is that the district court erred in failing to instruct jurors on identification testimony in the manner set forth in *United States v. Holley,* 502 F.2d 273 (4th Cir.1974). The standard of review for a trial court's refusal

---

* In light of the Court's ruling that the police were not required to obtain a warrant before seizing Patterson's Honda, the Court finds it unnecessary to address whether, had a warrant been required, the items found in the car would inevitably have been discovered.

to give a specific eyewitness identification jury instruction is abuse of discretion. *United States v. Brooks*, 928 F.2d 1403, 1408 (4th Cir.1991). A refusal to grant a requested instruction is only reversible error if the instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense. (internal quotation marks omitted) (citations omitted). *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir.1995).

In *Holley*, the Fourth Circuit adopted a detailed model jury instruction on eyewitness identification testimony. It did so "in the context of a case that contains no evidence of identification except eyewitness testimony." 502 F.2d at 275. In *Brooks*, this Court further outlined when a *Holley* instruction should be given:

> [U]nder the rule in this Circuit, the [*Holley*] instruction, in the opinion of the trial judge, is compelled only where the evidence in the case "strongly suggests the 'likelihood of irreparable misidentification.'"

928 F.2d at 1407.

The circumstances present in *Holley* are not present in this case. This was not a case wholly dependent on eyewitness identification. In case at bar, two witnesses who knew the defendant testified that he had participated in the robbery in addition to the eyewitnesses who testified to seeing him at the school. Greene's and Hooks's testimony take this case out of *Holley's* realm.

In addition, the evidence in this case does not strongly suggest the "likelihood of irreparable misidentification." In this case, the eyewitnesses were not eyewitnesses to the crime itself. Even if they misidentified Patterson and had actually seen another individual at the school, Patterson could have been convicted based on Greene's and Hooks's testimonies.

Patterson's theory of the case seems to be that it was his roommate Hooks who committed the robbery with Greene. Hooks is approximately the same size as Patterson and

admitted to committing other robberies with Greene in which he used the same type of gun as used by Greene's co-defendant in the bank robbery and in which he used Patterson's car. According to Patterson, therefore, the witness identifications bolstered the "shaky" testimony of Hooks and Greene.

■ The witness identifications were, in fact, conducted in a questionable fashion although hindsight is 20/20. One witness picked Patterson out of a photo lineup after having seen the same picture of him in the newspaper. The other witness picked Patterson out of two photo lineups one in which he wore glasses and one in which he did not. Patterson's photo, however, was the only one that appeared in both photo lineups.

The instruction given by the district court in this case was as follows:

> Eye witness testimony is an expression of belief on the part of a witness, and its value depends on the opportunity the witness had to observe the person initially and later to make a reliable identification. A reliable identification would be one based upon the initial observation at the time and place which the witnesses testified about. A reliable identification would not be one unfairly suggested by events that have occurred since the time of the initial observation.

Joint Appendix at 421. Although brief, the judge's instruction did cover the important issue of unfair suggestion and that identification should be based on the initial observation, not later events. The instruction also covers the importance of the opportunity the witness initially had to observe the person. Thus, the instruction meets the requirement of *Holley* that there be sufficient application of the law to the facts of the case in the instruction. 502 F.2d at 275–76. In addition, any concerns regarding poor identification procedures and misidentification could be and were raised on cross-examination and during closing argument. Accordingly, although a more specific instruction might have been desirable to Patterson, it cannot be said that the district judge abused his discretion in this instance.

### D. *Reasonable Doubt Instruction*

Finally, Patterson argues that the district court erred in violation of the Fifth and Sixth

Amendments to the United States Constitution in refusing to define reasonable doubt and in prohibiting defense counsel from defining reasonable doubt during closing argument. Whether the defendant should be permitted to define reasonable doubt is reviewed for abuse of discretion, *United States v. Headspeth*, 852 F.2d 753, 756 (4th Cir. 1988), and a district court's refusal to give a requested jury instruction is reviewable for abuse of discretion as well. *United States v. Russell*, 971 F.2d 1098, 1107 (4th Cir.1992).

■■■ The law is well-settled in this Circuit that a judge is not allowed to define reasonable doubt unless requested to do so by the jury. *United States v. Oriakhi*, 57 F.3d 1290, 1300 (4th Cir.1995). Furthermore, a district court may restrict counsel from arguing definitions of reasonable doubt. *Headspeth*, 852 F.2d at 756; *United States v. Crockett*, 813 F.2d 1310, 1317 (4th Cir.1987). Patterson raises no issues which make the Court believe it should reconsider a position that is well-settled in this Circuit. Therefore, the Court finds that the district judge did not abuse his discretion in refusing to define reasonable doubt.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.