**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 95-5088

KENNETH EDWARD BULLOCK, a/k/a
K.B., a/k/a Pete,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-94-160)

Argued: July 10, 1996

Decided: August 30, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Anthony George Spencer, MORCHOWER, LUXTON &
WHALEY, Richmond, Virginia, for Appellant. Laura Marie Everhart,
Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON
BRIEF:** Michael Morchower, Christopher C. Booberg, MOR-
CHOWER, LUXTON & WHALEY, Richmond, Virginia, for Appel-
lant. Helen F. Fahey, United States Attorney, Norfolk, Virginia, for
Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

After Kenneth E. Bullock was indicted for various federal narcotics offenses, he filed a pretrial motion to suppress, inter alia, more than nine kilograms of cocaine discovered during a search on July 13, 1994, of the automobile he had been driving. When the district court refused to suppress the cocaine, Bullock pled guilty to conspiring to distribute and to possess with the intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846. The district court sentenced him to 324 months imprisonment. In his plea agreement, Bullock reserved for appeal his right to challenge the search and evidentiary rulings made at the suppression hearing.

On appeal, Bullock contends that the automobile search violated his Fourth Amendment rights because (1) his traffic stop was pretextual; (2) his consent was produced by "pressure and coercion"; (3) his consent did not permit police to cut open the automobile's concealed compartment; (4) his arrest was not supported by probable cause; and (5) his arrest, even if valid, did not justify a warrantless search of the car. Bullock also contends that the district court violated his constitutional right to confront the officer who had stopped him by refusing, during the suppression hearing, to allow him to present evidence and to cross-examine the officer about his practice of escalating traffic stops of young black males into drug interdiction searches. Because we find Bullock's contentions without merit, we affirm.

I

Late in the morning of July 13, 1994, Maryland State Police Officers M.A. Lewis and R.A. Gunter stopped a brown Nissan Maxima which had a cracked windshield and was proceeding on Route 13 in Salisbury, Maryland, at 61 miles per hour in a 55-mile-per-hour zone. The driver, Kenneth E. Bullock, was unable to produce a driver's license or any other identification, but he did hand Officer Lewis the car's registration, which was in the name of "Quincy Jones." In retrieving the registration from the center console, Bullock quickly opened and closed the lid and attempted to block Officer Lewis' view of the console's contents with his shoulder. Officer Lewis neverthe-

2

less was able to observe a large bundle of cash in the console, secured with a rubber band. Lewis also observed two cellular telephones and a beeper elsewhere in the car. At the time of the stop, Raheema Watson was reclining in the passenger seat.

After receiving the car registration, Lewis asked Bullock to step out to the rear of the car to answer some questions. Bullock falsely identified himself as his brother, Keith J. Bullock, and stated that he was returning to Norfolk, Virginia, after having picked up his girl-friend from "the college" in Dover, Delaware. Bullock also claimed that Quincy Jones was a friend who had lent him the car.

Officer Lewis then questioned Raheema Watson separately. She too said that Bullock's name was Keith and that he had just picked her up from college in Delaware. But Watson could not tell Officer Lewis the name of the college. And, while talking to Lewis, Watson frequently looked over her shoulder in Bullock's direction.

Officer Lewis returned to Bullock and asked him about the money. Bullock represented that the roll contained $600 or $700. Lewis then asked Bullock if the car contained any drugs or weapons. Bullock responded negatively and said that Officer Lewis could check the car if he wished.

At that point, Officer Lewis removed the cash from the center console and approached Bullock. As Lewis began counting the money, Bullock admitted that the bundle contained over $2,000. He stated that he had planned to use the money on a shopping trip in Norfolk and again told Officer Lewis that he could search the car.

Officer Lewis then presented Bullock with a standard Maryland State Police consent-to-search form, which advised Bullock of his right to refuse consent to search the car, informed Bullock that signing the form acknowledged that he had given his knowing and voluntary consent "without fear, threat, or promise either express or implied," and stated that consent to search the car included "any suit-cases, boxes or other containers within" the car. After Officer Lewis read and explained the form, Bullock indicated that he understood it and signed the form "Keith Bullock."

3

During his search of the car, Officer Lewis first found a fully loaded 15-round, 9 millimeter clip containing "Black Talon" ammunition. Searching for a weapon, Officers Lewis and Gunter pulled the back seat down to discover a door and false compartment that appeared to have been professionally installed. As he attempted to open the compartment, Officer Lewis observed Bullock acting nervously. Lewis then instructed Officer K.J. Plunkert, who had been called for backup, to arrest Bullock and Watson.

After attempting unsuccessfully to open the secret compartment, Officers Lewis and Gunter drove the cars to a nearby state police barracks where Lewis cut the compartment open and discovered 9.7 kilograms of cocaine.

On December 1, 1994, Bullock was charged in a 20-count indictment with various federal drug offenses. He filed a pretrial motion to suppress, inter alia, the cocaine that had been discovered during the July 13, 1994, search of the car he had been driving.

At the suppression hearing, Bullock sought to introduce for impeachment purposes a series of incident reports involving stops that Officer Lewis had made from February 1993 through August 1994. Bullock argued that the reports revealed Lewis' modus operandi of using routine traffic stops to obtain drivers' consent to search. The district court refused to permit the evidence and any cross-examination about Lewis' prior stops, explaining that while the legality of a search must be based on the totality of circumstances, evidence concerning past stops would enmesh the court in collateral issues. The court further noted that there was sufficient evidence to allow it "to make th[e] determination [as to whether Officer Lewis had sufficient justification] without going back and trying to examine his motives or his MO in other kinds of cases."

After the hearing, the district court denied Bullock's motion to suppress the cocaine, and Bullock entered into a plea agreement with the United States. Pursuant to the agreement, Bullock conditionally pled guilty to Count I of his indictment, which charged him with conspiring to distribute and to possess with the intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846, and the government dismissed the remaining counts.

4

This appeal followed.

II

Bullock first contends that the district court erred in refusing to permit him to introduce evidence concerning Officer Lewis' prior traffic stops and to cross-examine Lewis about them. We disagree.

The district court astutely recognized the danger of enmeshing the court in mini-trials about each of Officer Lewis' past stops. Focusing on such collateral matters would unduly encumber the court's proceedings. Moreover, Officer Lewis' subjective motives are irrelevant to a proper Fourth Amendment analysis. See Whren v. United States, 116 S. Ct. 1769, 1774 (1996). Finally, Bullock failed to lay any foundation for an equal protection challenge based on racially selective enforcement procedures. Id. (selective enforcement based on race implicates equal protection, not Fourth Amendment); see also Armstrong v. United States, 116 S. Ct. 1480, 1486 (1996) (standard for establishing Fifth Amendment selective-prosecution claim is "a demanding one").*

III

Turning to the automobile search, Bullock does not deny that after Officer Lewis stopped him, he gave Lewis consent to search the automobile. He argues, rather, that the stop was motivated by a race-based drug courier profile and that his consent was produced by pressure and coercion. These contentions are without merit. Officer Lewis' motives for stopping an automobile that was violating traffic laws is irrelevant to the legitimacy of the stop under a Fourth Amendment analysis. See Whren, 116 S. Ct. at 1774. And while racially motivated law enforcement can violate the equal protection component of the Fifth Amendment's Due Process Clause, see id., Bullock has failed to meet the rigorous standard for proving such a violation, see Armstrong, 116 S. Ct. at 1486. Also, we find no evidence that the officers placed undue pressure on Bullock to sign the consent form.

_____

*Because of our rulings here, we deny Bullock's motion to supplement the record or to take judicial notice of these earlier, unrelated incidents.

On the contrary, before signing the form, Bullock had eagerly offered his consent to Officer Lewis two times.

Bullock argues further that the scope of his consent did not include breaking open secret compartments and that the police did not have probable cause for such a search. Even though Bullock's written consent encompassed "suitcases, boxes or other containers" within the car, we need not decide whether a consent to search authorizes breaking into a secret compartment. The officers in this case had probable cause to believe that the car Bullock had been driving contained contraband and, therefore, were justified in searching it without a warrant under the well-established "automobile exception." See United States v. Gastiaburo, 16 F.3d 582, 586 (4th Cir.), cert. denied, 115 S. Ct. 102 (1994).

After the police officers legally stopped Bullock for traffic violations, he was unable to produce a driver's license or other identification. Although Bullock attempted to conceal Officer Lewis' view of the center console, Lewis observed a large roll of cash, and, elsewhere in the car, two cellular telephones and a beeper. After Bullock consented to a search of the vehicle, moreover, Lewis discovered ammunition and a secret compartment, often used, in Lewis' experience, by drug traffickers to conceal contraband. And as the officers tried to open the concealed compartment, Bullock acted nervously. Finally, Bullock and his passenger gave incredible explanations for their trip, claiming that Bullock was transporting his girlfriend home from a college that neither of them could name. We believe that these circumstances, taken in their totality, provided the officers with probable cause to conduct the automobile search.

Accordingly, we affirm the judgment of the district court.

AFFIRMED

6