UNITED STATES of America,

v.

Ronald Lee BROOKINS, Defendant.

No. CRIM.A.2:02CR153.

United States District Court,
E.D. Virginia,

Norfolk Division.

Oct. 23, 2002.

Larry Mark Dash, Office of Federal Public Defender, Norfolk, VA, for Defendant.

Sherrie S. Capotosto, U.S. Atty's Office, Norfolk, VA, Fernando Groene, U.S. Atty's Office, Norfolk, VA, for U.S.

### *MEMORANDUM OPINION AND ORDER*

JACKSON, District Judge.

This matter is before the Court on Ronald Lee Brookins' ("Defendant") Motion # 1 for Suppression of Evidence obtained as a result of a search of Defendant's vehicle by members of the Suffolk Police Department on February 20, 2001. On October 2, 2002, the Court entered an Oral Order granting Defendant's motion to suppress. This Memorandum Opinion and

Order sets forth the Court's reasons for granting Defendant's motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 2001, at approximately 3:00 p.m., five members of the Suffolk Police Department's Special Investigation Unit were driving an unmarked police vehicle[1] on East Washington Street in Suffolk when they noticed Defendant's car backed into a driveway. Officers recognized the vehicle as belonging to Defendant, who has been convicted for drug offenses, and was the subject of an ongoing narcotics investigation. Defendant drove a gold Ford Expedition ("the vehicle") with Virginia license plates that read "OPTIMA." One of the officers had recently received reliable confidential informant information that Defendant frequently made trips to East Washington Street and Feeny Avenue to deliver narcotics.

The officers drove past Defendant's vehicle, and saw Defendant and at least one other person, later identified as Benny Harvey ("Harvey"), standing in the open doorway of the vehicle, and Defendant's wife sitting in the backseat.[2] The officers drove down the street and pulled into a driveway so they could turn around and drive past the Defendant one more time. As they pulled into the driveway, at least two officers witnessed Defendant reach into the vehicle, and hand Harvey a clear plastic sandwich bag containing suspected narcotics. Both Harvey and Defendant immediately walked away from the vehicle "at a fast pace," according to the officers. Two of the officers followed Harvey on foot and saw him discard the plastic bag. They recovered the bag, which contained 26 small separately packaged rocks of suspected crack cocaine. Harvey was arrested and searched; officers recovered a 2-way Radio Shack radio on his person. Defendant was found several minutes later in the parking lot of a nearby grocery store and also placed under arrest.

However, although at least one officer remained in the unmarked police vehicle and did not pursue either the Defendant or Harvey, none of the officers attempted to prevent Defendant's wife or the vehicle from leaving.[3] Therefore, Defendant's wife drove away in the vehicle "at a high rate of speed," according to the officers' testimony. The officers lost sight of the vehicle, but found it roughly fifteen minutes later parked in the driveway of Defendant's mother-in-law's house at 911 Battery Avenue in Suffolk. At the house, officers spoke to Defendant's wife, and she agreed to accompany them to the station house. One of the officers obtained the keys from Defendant's wife, and conducted a cursory search of the vehicle while it was still parked in the driveway. The officers testified that they did not seek consent from Defendant's wife to search the vehicle. Two additional Suffolk Police department vehicles reported to the residence at 911 Battery Avenue.

The officers then took Defendant's wife to the police station where they questioned her. She was not placed under arrest or

---

**1.** Testimony from one of the officers indicated that members of the community are aware that the "unmarked police vehicle" is used by officers in the Suffolk Police Department.

**2.** There was conflicting testimony as to exactly how many people were near the vehicle, but all of the officers testified that Defendant, his wife, and Harvey were either near or inside the vehicle.

**3.** Testimony from three of the five officers at the suppression hearing confirmed that not all of them participated in the foot chases. However, none of the officers indicated in any way, by either blocking the vehicle with their vehicle or verbally, that Defendant's wife was not free to leave the scene.

charged with any offense. One of the officers drove the vehicle to the police station where it was immediately searched. They recovered electronic scales and a Radio shack 2–way radio in the center console, aluminum foil in the driver's side rear compartment, Defendant's wallet containing his driver's license and social security card in a compartment below the steering wheel, and the vehicle registration in Defendant's name and a box of razor blades in the glove box.

On July 31, 2002, Defendant was indicted in the United States District Court for the Eastern District of Virginia for unlawfully, knowingly and intentionally distributing in excess of five grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack," a schedule II narcotic controlled substance, a violation of Title 21, United States Code Section 841(a)(1) and (b)(1)(B)(iii) and Title 18, United States Code, Section 2. On September 9, 2002, Defendant filed his Motion # 1 for Suppression of Evidence. On September 20, 2002, the Government filed its response to Defendant's motion to suppress. On October 2, 2002, the Court heard argument on the matter. The Court stated its findings of fact and conclusion of law on the record and granted Defendant's motion to suppress. On October 10, 2002, the United States filed a motion for reconsideration offering an alternative basis for the Court to uphold the warrantless search, specifically, that the vehicle was subject to forfeiture because it was used to facilitate a drug transaction. The motion for reconsideration is **DENIED** and this Memorandum Opinion and Order supercedes the Court's October 2, 2002 ruling from the bench.

## II. DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. The Supreme Court has generally interpreted the Fourth Amendment's requirement that every search or seizure be reasonable to mean that an arrest or search must be based on probable cause and executed pursuant to a warrant. *See Katz v. U.S.,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is well settled that a search conducted without a warrant is *per se* unreasonable unless a valid exception to the warrant requirement exists. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Government argues that the search was valid because it was incident to a lawful arrest, or alternatively, permissible under the "automobile exception" to the warrant requirement.

### A. Search Incident to Lawful Arrest

The Supreme Court has established that when a person is lawfully arrested, the police may, without a warrant, contemporaneously search the person accused for weapons or "the fruits or…implements used to commit the crime" and the immediately surrounding area. *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Chimel v. California,* 395 U.S. 752, 764, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Milton,* 52 F.3d 78, 80 ( 4th Cir.1995). Such searches have been considered valid because of "the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime." *Preston,* 376 U.S. at 367, 84 S.Ct. 881; *Belton,* 453 U.S. at 457, 101 S.Ct. 2860; *Chimel,* 395 U.S. at 764, 89 S.Ct. 2034. Thus, the Supreme Court had held that when a lawful custodial arrest of an occupant of a vehicle has been made, then as a contemporaneous incident of that arrest, the passenger compartment of the vehicle may also be

searched. *Belton,* 453 U.S. at 460, 101 S.Ct. 2860; *Milton,* 52 F.3d at 80. However, this exemption from the warrant requirement is limited to the exigencies of the circumstances and to things under the accused's immediate control. *Id; Preston,* 376 U.S. at 366, 84 S.Ct. 881.

■ The search and seizure of Defendant's car is clearly not justified as a search incident to valid arrest, as asserted by the Government. Testimony of three Suffolk Police officers as well as the statement of facts in the Government's brief clearly indicate that Defendant was arrested in the parking lot of a nearby grocery store, several minutes after leaving his vehicle. The vehicle was no longer in Defendant's immediate control and therefore, there existed no likelihood that he could obtain a weapon from the vehicle, destroy evidence of a crime, or use the vehicle to escape. However, even if the officers were entitled to search the car incident to Defendant's arrest,[4] officers not only failed to

conduct the search at the scene of the arrest, but they also allowed the vehicle to depart the scene. Thus, all rationale for an immediate warrantless search incident to arrest, such as the preservation of evidence, vanished once police lost sight of the vehicle. When a search is "remote in time or place from the arrest," the search is no longer incident to arrest and a warrant must first be obtained. *Preston,* 376 U.S. at 367, 84 S.Ct. 881; *Coolidge v. New Hampshire,* 403 U.S. 443, 457, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Testimony of the officers also indicated that Defendant's wife was never arrested or charged at the residence or later at the station house. Therefore, because this search occurred at a significantly later time, away from the area of the arrest, it was not a search incident to valid arrest.[5]

## B. The Automobile Exception

Another well-established exception to the warrant requirement is the automobile

---

**4.** In his dissent, Justice Brennan indicates that the majority rule set forth in *Belton* "grants police officers authority to conduct a warrantless 'area' search under circumstances where there is no chance that the arrestee 'might gain possession of a weapon or destructible evidence.'" 453 U.S. at 468, 101 S.Ct. 2860 (Brennan, J., dissenting) (quoting *Chimel,* 395 U.S. at 763, 89 S.Ct. 2034). Therefore, under the *Belton* reasoning, officers may have been able to search the car incident to the arrest of Defendant.

**5.** The Government asserts in its brief that law enforcement may seize a car at the scene of an arrest if it has probable cause, and search the vehicle at a later time and place. *Chambers,* 399 U.S. at 52, 90 S.Ct. 1975 (Where vehicle could have been searched on the spot when stopped because there existed probable cause, it could have still been searched at the station-house); *Michigan v. Thomas,* 458 U.S. 259, 261–262, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982); *United States of America v. Chavis,* 880 F.2d 788, 791 (4th Cir.1989) ("The Supreme Court has made it abundantly clear the neither the passage of several hours between

the arrest and the search nor the immobilization of the vehicle by placing it in police custody invalidates the probable cause basis for conducting a warrantless automobile search."); *United States v. Gastiaburo,* 16 F.3d 582, 586–87 (4th Cir.1994). However, the Government fails to recognize that the vehicle must first be lawfully *seized at the arrest scene* before conducting a warrantless search based on probable cause alone. *Thomas,* 458 U.S. at 261, 102 S.Ct. 3079. In all of the cases mentioned above, the facts indicate that the vehicles in question were lawfully seized incident to the arrest and later searched. Here, officers allowed the vehicle to leave and lawful seizure at the place of arrest did not occur. Therefore, while the Government is correct in its assertion that a warrantless *search* need not occur at the time and place of the arrest, the warrantless *seizure* must in order for it to be lawful. *United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) ("There is no requirement that the warrantless search of a vehicle occur contemporaneously with its *lawful seizure* ") (emphasis added); *See discussion infra* Part II.C.

exception. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *United States v. Bullock*, 94 F.3d 896, 899 (4th Cir.1996). In general, there are two factors responsible for this different treatment of vehicles: "(i) the mobility of vehicles often makes it impracticable to obtain a search warrant in advance of the search; and (ii) in the Fourth Amendment hierarchy of values, vehicles are not deemed to merit as much protection as premises." WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT 458, § 7.2 (3d ed.1996) [hereinafter SEARCH AND SEIZURE]; *See also Carroll*, 267 U.S. at 153, 45 S.Ct. 280; *Chambers*, 399 U.S. at 51, 90 S.Ct. 1975. The Supreme Court has held that as a general rule, police should obtain a warrant when they have probable cause to search a vehicle unless there are sufficient exigent circumstances to justify the warrantless search. *Chambers*, 399 U.S. at 51, 90 S.Ct. 1975; *Carroll*, 267 U.S. at 153, 45 S.Ct. 280. Such exigent circumstances often exist in connection with readily movable vehicles.[6] Recently, however, the Supreme Court has placed less weight on exigency and the ready mobility of vehicles, and now focuses more on "reduced expectations of privacy in a vehicle that travels on public highways." *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 83

L.Ed.2d 890 (1985) ("A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search."); *United States v. Gastiaburo*, 16 F.3d 582, 586–587 (4th Cir.1994); *See generally California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

## 1. Probable Cause

In *Ornelas v. United States*, the Supreme Court defined probable cause as the level of suspicion required to justify governmental intrusion upon Fourth Amendment protected interests. 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). To determine probable cause, courts must first determine the "historical facts," of the events leading up to a search. *Id.* at 695, 116 S.Ct. 1657. Courts must then decide whether these "historical facts," from the viewpoint of a reasonable police officer, amount to probable cause. *Id.* at 696–97, 116 S.Ct. 1657. Probable cause may come from personal observations of officers, including their past experience, training, and expertise, *see Texas v. Brown*, 460 U.S. 730, 742–43, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); from reliable, known informants or information from an independent sources that can be independently corroborated, *see Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); from evidence seized in plain view or in the other "plain" corol-

---

**6.** *United States v. Ross*, 456 U.S. 798, 808–809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) ("In the defining the nature of this 'exception' to the general rule that 'in cases where the securing of a warrant is reasonably practical, it must be used,'...the Court in *Carroll* emphasized the importance of the requirement that officers have probable cause to believe that the vehicle contains contraband."); *Chambers*, 399 U.S. at 51, 90 S.Ct. 1975 (Carroll...holds a search warrant unnecessary

where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.); *United States v. Muhammad*, 658 F.2d 249, 252 (4th Cir.1981) ("Most courts agree that when a moving car is stopped by law enforcement officials who have probable cause to search the car, *Chambers* permits..an immediate warrantless search..."); *Bullock*, 94 F.3d at 899.

laries that does not violate the Fourth Amendment. *See Horton v. California*, 496 U.S. 128, 142, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

■ Probable cause did exist at the time of Defendant's arrest. Defendant has previously been convicted of drug offenses, and a reliable confidential informant told officers that the Defendant made narcotics deliveries in the vicinity of E.Washington street. Although testimony was conflicting, officers stated that they saw Defendant retrieve a package from the front seat of the car and pass it to Harvey,[7] who later discarded it. When the package was recovered by officers, it was determined that it contained crack cocaine. These facts are sufficient to support a reasonable belief by the officers that contraband may have been present in the vehicle. *Ornelas*, 517 U.S. at 695, 116 S.Ct. 1657; *Gates*, 462 U.S. at 238, 103 S.Ct. 2317; *Brown*, 460 U.S. at 742–43, 103 S.Ct. 1535. Therefore, probable cause did exist at the time of Defendant's arrest. *Id.*

However, contrary to the Government's position, probable cause did not extend to the search of the vehicle at the residence fifteen minutes after Defendant's arrest. Once officers allowed the car to leave the scene, some of the factual bases supporting probable cause also vanished. First, the Court is not firmly convinced that officers actually witnessed an alleged passing of suspected drugs. *See supra* note 7. Second, officers allowed the vehicle to depart the scene, thus allowing Defendant's wife an opportunity to dispose of any contraband that remained in the car. It is not clear that, in light of the "historical facts," a reasonable police officer could determine whether probable cause still existed some fifteen minutes later.[8] *Ornelas*, 517 U.S. at 696–97, 116 S.Ct. 1657. Therefore, that determination should have been made by a neutral and detached magistrate as required by the Fourth Amendment. *Coolidge*, 403 U.S. at 450–51, 91 S.Ct. 2022 ("Any assumption that evidence sufficient to support a magistrate's disinterested de-

**7.** One officer stated that he did not witness the this alleged transaction while the other two claimed to see slightly different events occur. Moreover, the Government's brief states facts which differ from the testimony of the officers.

**8.** The Court cannot accept, through any stretch of logical reasoning, that probable cause still existed after police officers allowed the vehicle to depart. If officers possessed such an urgent need to search the vehicle, they should have: (1) searched it immediately at the scene and should not have allowed it to depart, or (2) seized the vehicle at the scene. *Chambers*, 399 U.S. at 52, 90 S.Ct. 1975 ("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an *immediate search* without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment") (emphasis added). Nothing in the Fourth Amendment or in long established Supreme Court precedent indicates that offi-

cers can later determine they made an error, seize a vehicle from private property, and then conduct a warrantless search. *See United States v. Ross*, 456 U.S. 798, 807, n. 9, 102 S.Ct. 2157, 72 L.Ed.2d 572 ("The Court held that if police officers have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct an *immediate search* of the contents of that vehicle") (emphasis added). This is precisely the type of situation the provisions of Fourth Amendment are designed to encompass. *See Coolidge* 403 U.S. at 480, 91 S.Ct. 2022 ("If we were to agree…that the police may, whenever they have probable cause, make a warrantless entry for the purpose of making an arrest, and that seizures and searches of automobiles are likewise *per se* reasonable given probable cause, then by the same logic *any* search or seizure could be carried out without a warrant, and we would simply have read the Fourth Amendment out of the Constitution"). The Court cannot allow law enforcement to emasculate well settled constitutional protections in order to cure their own mistake.

termination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity...") (quoting *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)). Thus, when police located the vehicle, officers should have sought a search warrant because probable cause to conduct a warrantless search did not exist.

### 2. Exigent Circumstances and Ready Mobility

■ Assuming that probable cause did exist when officers located the vehicle, under the facts of this case, there still must be some showing of exigent circumstances to justify a warrantless search of a vehicle. Recently, the Supreme Court has held that "the automobile exception does not have a separate exigency requirement." *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); *Carney*, 471 U.S. at 391, 105 S.Ct. 2066; *Johns*, 469 U.S. at 484, 105 S.Ct. 881. When it is disputable whether a vehicle is readily mobile, the Supreme Court suggests that a lesser expectation of privacy in a vehicle often justifies a warrantless search. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); *Carney*, 471 U.S. at 391, 105 S.Ct. 2066; *Johns*, 469 U.S. at 484, 105 S.Ct. 881. However, it is not clear that the Supreme Court has entirely eliminated a required showing of exigent circumstances.[9] In the cases mentioned above, the elimination of a showing of exigency has occurred in situations where suspects were actually driving the vehicle, were in the vehicle itself, or other facts existed that made the car readily mobile. In such cases, it is a given that the car is mobile and the opportunity to search it may be fleeting, so there is no need to require an additional showing of a risk of flight or mobility; when such facts exist the Supreme Court has effectively made exigent circumstances equivalent to ready mobility. Thus, the Supreme Court has expressly eliminated the requirement of a showing of exigency only in those situation where "a car is readily mobile and probable cause exists to believe it contains contraband." *Dyson* at 467, 119 S.Ct. 2013 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)); *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carney*, 471 U.S. at 390, 105 S.Ct. 2066.

In the present case, the facts do not support a determination that the car was readily mobile and therefore, that exigent circumstances necessarily existed. Here, police did not stop the vehicle while Defendant or his wife actually occupied it. In fact, the car was unoccupied and parked when officers discovered it. At least three police vehicles reported to the residence where the vehicle was parked, and testimony indicated that any one of those vehicles could have blocked Defendant's vehicle from leaving the driveway. In fact, when they arrived, officers stopped an unidentified man from getting in the vehicle. In *Coolidge*,[10] the Court held a search unconstitutional where the automobile was regu-

---

9. The Court notes that the Supreme Court has implied that exigent circumstances are never necessary to justify a warrantless search, but has never expressly stated such a conclusion without first noting that the vehicle in question was somehow readily mobile. *See* SEARCH AND SEIZURE, *supra* at 477–81, 91 S.Ct. 2022. As a result, lower courts have split when interpreting its meaning. *See United States v. Reed*, 26 F.3d 523 (5th Cir.1994) (holding that *Carney* notwithstanding, "the fact that a car is moveable alone is not sufficiently exigent circumstances to justify a warrantless search"); *United States v. Reis*, 906 F.2d 284 (7th Cir.1990) ("the inherent mobility of automobiles by itself provides the only exigent circumstances needed").

10. The fact that *Coolidge* has never been overturned lends more support to this Court's view that the Supreme Court has eliminated a showing of exigency only when there is at least a minimal showing that a vehicle is in

larly parked in a private driveway and police had ample opportunity to obtain a warrant. 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. In this case, similar to the facts in *Coolidge,* Defendant's vehicle was parked in a residential driveway, and police not only had the keys to the vehicle, but they also had the opportunity to block to vehicle from being "readily mobile" while they obtained a warrant. *Cf. Carney,* 471 U.S. at 392–93, 105 S.Ct. 2066 (Even though it was found stationary, a mobile home fell under automobile exception because it could have been readily moved beyond the reach of police). Moreover, because the vehicle could not be readily moved, it follows that the opportunity to search the car was not fleeting. Thus, the Government must present some evidence of ready mobility in order to justify a warrantless seizure and search based on these facts. However, the court finds that no such facts existed because the vehicle was immobile, under constant police supervision, and there was no risk of any evidence being destroyed. Therefore, the facts of this case closely parallel the facts and reasoning of *Coolidge,* and the warrantless search cannot be upheld.

## C. Unlawful Seizure

When a vehicle is seized and searched later, the seizure itself must be lawful in order for the search to be upheld. *Coolidge,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Cardwell,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325; *Chavis,* 880

F.2d at 791. The Supreme Court has indicated that a warrantless seizure is impermissible if the vehicle is parked on private property or if the incriminating aspect of the vehicle is not in plain view. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Cardwell,* 417 U.S. at 593, 94 S.Ct. 2464; *Coolidge,* 403 U.S. at 447, 91 S.Ct. 2022 (Search held unconstitutional where the vehicle was seized from a private driveway and police had ample opportunity to obtain a search warrant); *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 351, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) ("The seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasion of privacy"); *Florida v. White,* 526 U.S. 559, 566, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999); *United States v. Patterson,* 150 F.3d 382, 386 (4th Cir.1998) (Indicating that a vehicle believed to contain evidence of a crime may be seized if parked in public, knowingly exposed to the public). Moreover, the concept of constructive possession does not justify the search or seizure of an item not in actual possession. *Cardwell,* 417 U.S. at 592 n. 6, 94 S.Ct. 2464 (Where keys were seized in plain view incident to arrest, constructive possession of the vehicle did not justify its search and seizure).

Defendant's car was unlawfully seized by Suffolk police officers.[11] Defendant's wife did not consent to the seizure of the car,[12] nor was seizure made incident to any

---

fact readily mobile. Even in light of the Supreme Court's reasoning that warrantless searches may be upheld because a vehicle enjoys a lesser expectation of privacy, without regard to ready mobility, *see Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890, it has only adopted that reasoning when the facts show at least some chance of ready mobility. *See discussion infra* Part II.B.2

**11.** Although the Government argues that the car was seized incident to Defendant's arrest,

seizure of the vehicle must have occurred at the scene of the arrest, not fifteen minutes later after officers allowed the vehicle to depart the scene. *see supra* note 5.

**12.** Testimony from all three officers indicated that Defendant's wife was told that she had to give them the keys because the car was being seized as evidence. None of the testimony indicated that officers obtained actual consent to seize the vehicle.

arrest, as discussed *infra* Part II.A. *See also supra* note 5. The fact that police officers had constructive possession of the vehicle does not obviate the need to obtain a warrant before seizing the vehicle and taking it to the station house. *Cardwell,* 417 U.S. at 592 n. 6, 94 S.Ct. 2464. In fact, officers could have prevented the vehicle from leaving the residence while obtaining a warrant to seize and search the vehicle. Moreover, a warrant should have been obtained because none of the evidence seized was in plain view, and the vehicle was seized in a private driveway, not a public place. *Horton,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; *cf. Florida v. White,* 526 U.S. at 565, 119 S.Ct. 1555 ("...our Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public places"); *Patterson,* 150 F.3d at 386–87. Thus, even if the Court agreed that there was probable cause and no exigent circumstances were required to search the vehicle, officers still could not seize the car, drive it to the station house and conduct a search without first obtaining a warrant. Accordingly, seizure of the vehicle violated the Fourth Amendment, and the subsequent warrantless search of the vehicle at the station house was likewise unconstitutional.

### D. Vehicle Subject to Forfeiture

■ It is well-settled that certain property is subject to forfeiture. In particular, federal law provides that vehicles used "to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment" of all controlled substances, are subject to forfeiture.[13] 21 U.S.C. § 881(a) (1999). In addition, Virginia state

law allows the lawful seizure of motor vehicles used in connection with illegal drug transactions. VA. CODE ANN. § 18.2–249 (Michie Supp.2002). Several Courts of Appeal have held that pursuant to section 881, the warrantless seizure of a vehicle subject to forfeiture is justified when probable cause exists, even absent exigent circumstances. *United States v. Bizzell,* 19 F.3d 1524 (4th Cir.1994); *United States v. Pace,* 898 F.2d 1218, 1241 (7th Cir.1990); *United States v. Valdes,* 876 F.2d 1554 (11th Cir.1989); *United States v. Decker,* 19 F.3d 287 (6th Cir.1994); *United States v. Salmon,* 944 F.2d 1106 (3d Cir.1991); *United States v. Thompson,* 925 F.2d 234 (8th Cir.1991); *Contra United States v. Lasanta,* 978 F.2d 1300 (2d Cir.1992). The Supreme Court agreed, relying on its reasoning in the *Carroll–Carney* line of cases, discussed *infra* Part II.B, that vehicles are readily movable and are afforded less privacy. *See Florida v. White,* 526 U.S. at 563–65, 119 S.Ct. 1555. However, the Court limited its holding by allowing a warrantless seizure only when police seize a vehicle from a public place and they have probable cause to believe that it is forfeitable contraband. *Id.* at 561, 119 S.Ct. 1555; *see generally Coolidge,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The Court stated that "in explaining this rule, we have drawn upon the established 'distinction between a warrantless seizure in an open area and such a seizure on private premises'" *Id.* at 566, 119 S.Ct. 1555 (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Therefore, it is clear that even when a vehicle is subject to forfeiture, it must first be lawfully seized in accordance with the rules set forth by the Supreme Court. *See*

---

**13.** The Government also cites 18 U.S.C. § 981(a)(1)(B), but does so incorrectly. Section 981(a)(1)(B) allows forfeiture of property "derived from or traceable to, any proceeds obtained directly or indirectly from an offense against a *foreign nation...*" 18 U.S.C. § 981(a)(1)(B) (Michie Supp.2002) (emphasis added). Therefore, it is inapplicable in this context.

*Horton,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; See *also discussion infra.* Part II.C.

The Court cannot admit the evidence in dispute based on the alternative theory that the vehicle was subject to forfeiture and thus, a warrantless seizure and subsequent search were valid. The Government relies on three Fourth Circuit cases to justify the warrantless seizure of Defendant's vehicle as forfeitable contraband. However, those cases were decided prior to the Supreme Court's holding in *Florida v. White,* which controls based on these facts. The Government also relies on *Florida v. White,* but it misinterprets the holding.[14] *Florida v. White* expressly held that warrantless seizures of vehicles subject to forfeiture are admissible so long as the seizure occurs in a public area. *Florida v. White,* 526 U.S. at 561, 119 S.Ct. 1555. Moreover, although Justices Souter and Breyer, in a concurring opinion, felt that the Court should allow warrantless seizure on both public as well as private property, the majority of the Court did not agree. It is clear that because at least two officers witnessed an alleged drug transaction occur in the vehicle, the vehicle was subject to forfeiture. However, as discussed *infra.* Part II.C, the vehicle was seized in a private driveway, officers did not have consent for the seizure, and therefore, the seizure was unlawful. As a result, the Court cannot uphold the search.

### III. CONCLUSION

For the reasons stated above, and because the Court finds no alternative basis on which the warrantless search of Defendant's vehicle may be upheld, Defendant's motion to suppress is **GRANTED**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to the parties.

**IT IS SO ORDERED.**

---

14. The Government asserted in its Motion for reconsideration that the Supreme Court upheld the warrantless seizure of defendant's vehicle because they had probable cause to believe the vehicle itself was contraband. While this may have been part of the Supreme Court's reasoning, it was not the express holding. *Florida v. White,* 526 U.S. at 561, 119 S.Ct. 1555 ("In this case we must decide whether the Fourth Amendment requires the police to obtain a warrant before seizing an automobile from a public place when they have probable cause to believe that it is forfeitable contraband. We hold that it does not").