GREGORY, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s decision to affirm a) the district court’s dismissal of Mason’s ineffective assistance claims against his appellate counsel, and b) the dismissal of his claim that his trial counsel was ineffective for failing to raise a Fifth Amendment challenge. Mason also contends that, “[ijn light of the evidence of racially motivated law enforcement and Trooper Swicord’s admitted selective enforcement of the window tint law,” Appellant’s Br. 26, his trial counsel provided ineffective assistance by failing to develop an equal protection challenge. The majority affirms the district court’s dismissal of this claim. I respectfully dissent.
Mason’s trial counsel faced a record that included: Trooper Swicord’s admission that he uses window tint violations to “fish” for vehicles that “peak[hisj interest”, statements about Mason’s behavior that are directly contradicted by video footage of the stop, use of the word “spooky” to describe Mason and his cousin, an inexplicable reference to Mason’s race as a justification for expecting violence, and actions inconsistent with Trooper Swicord’s alleged concern for his safety. And yet Mason’s trial counsel not only failed to raise an Equal Protection Clause challenge, but also neglected even to investigate a single one of these red flags to determine whether such a challenge was viable. If Trooper Swicord’s actions were driven by legitimate concerns rather than racial bias, a clarifying line of inquiry would have afforded him the opportunity to make his motivations clear. If, on the other hand, Trooper Swicord did target Mason because of his race, the attorney’s investigation would have given Mason a chance to challenge the constitutional violation. Instead, both Mason’s and Trooper Swicord’s narratives remain incomplete. Trial counsel’s deficient performance caused Mason to suffer prejudice at trial, and cannot satisfy the Sixth Amendment’s guarantee of effective assistance of coun *834 sel. For these reasons, I would reverse the district court on this issue.
The majority correctly notes that the standard for establishing ineffective assistance of counsel is deferential to attorneys. See Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). But reasonableness is the touchstone of this inquiry, and an attorney who acts unreasonably in representing her client has not provided counsel that can pass constitutional muster. Id. at 687, 104 S.Ct. 2052. Furthermore, while strategic decisions based on an attorney’s thorough investigation are “virtually unchallengeable,” “strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.” Id. at 690-91, 104 S.Ct. 2052. The Court in Strickland recognized that “counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Id. at 691, 104 S.Ct. 2052.
To determine whether Mason’s trial counsel was deficient for failing to develop a selective enforcement claim, we must examine the claim itself. The Equal Protection Clause prohibits officers from selectively enforcing laws based on race. Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). When determining whether a traffic stop was unconstitutionally selective, this Court applies the selective prosecution standard laid out in United States v. Armstrong, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). See United States v. Bullock, 94 F.3d 896, 899 (4th Cir.1996). The claimant must show that the enforcement policy 1) “had a discriminatory effect,” and 2) “was motivated by a discriminatory purpose.” Armstrong, 517 U.S. at 465, 116 S.Ct. 1480.
To prove a discriminatory effect, Mason’s counsel would have had to show that similarly situated persons of a different race were not subject to traffic stops. Id. at 465, 116 S.Ct. 1480. Trooper Swicord admitted that he must enforce the window tint law selectively because violations are too numerous. He stated at trial that he uses the law to “fish” for other violations, and that he stops any vehicle that “peaks [his] interest.” Mason’s trial counsel did not ask Trooper Swicord to elaborate on this pronouncement, nor did she question him about the racial makeup of those he stops. Mason also presents evidence that window tint laws in other jurisdictions have an association with complaints of racial profiling. See, e.g., Police Complaints Board, MPD Enforcement of the District’s Window Tint Law (Nov. 21, 2013) (reporting that African American motorists filed 97 percent of complaints related to window tint law enforcement). Although this evidence cannot prove a discriminatory effect in Georgia, it is relevant to the question of whether counsel’s decision not to investigate discriminatory effect was reasonable.[1] The fact that window tint laws have been linked to racial discrimination in other jurisdictions, combined with Trooper Swi-cord’s admittedly subjective enforcement of Georgia’s window tint law, may not be sufficient standing alone. But coupled with the evidence suggesting discriminatory purpose discussed below, these facts *835 would have motivated a reasonable attorney to investigate a potential discriminatory effect.
“[Discriminatory purpose may often be inferred from the totality of the relevant facts.” Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Here, several facts suggest that race may have motivated Trooper Swi-cord’s actions. Trooper Swicord admitted to using window tint violations to “fish” for other violations.[2] He testified that he became suspicious when Mason failed to pull over quickly, but the video of the traffic stop shows that Mason began to pull over mere seconds after Trooper Swicord activated his blue lights. Right after pulling Mason over, Trooper Swicord questioned Mason and Govan about matters unrelated to the window tint before testing the windows’ transparency. Trooper Swicord testified that Mason appeared nervous and refused to make eye contact, but the video of the stop contradicts this assessment. After questioning Mason and Govan, Trooper Swicord called for backup, referring to Mason and Govan as “spooky, spooky.”[3] At the suppression hearing, when asked why he called for backup, Trooper Swicord stated that he feared the situation would turn violent, noting that “Mr. Mason and Mr. Govan are older black males that are not in good shape.” He did not explain why he felt Mason and Govan’s race was relevant to his belief that they were likely “fixing to shoot it out,” and Mason’s counsel did not ask. Furthermore, Trooper Swicord’s actions were not those of an officer fearing for his safety. He left Mason standing outside the car and turned his back on him while he questioned Govan. He called in Mason and Govan’s names, but asked that the dispatcher “lj]ust hold em for right now” rather than provide a background check. He contacted a specific K9 officer instead of placing a general call for backup.
Perhaps each of these facts could be explained away. Maybe Trooper Swicord did not mean “spooky” to be a racial epithet. Maybe something other than Mason and Govan’s race “peaked [his] interest.” Maybe he was simply using “older black males” as an identifier (although it is difficult to see why such a description would be relevant in the context of providing justification for calling backup). But we do not know why Trooper Swicord did what he did, because Mason’s counsel did not question him about his race-related references or the contradictions between his testimony and the video of the stop. These numerous red flags, when viewed as a whole, would lead any reasonable attorney to investigate whether Trooper Swicord had a discriminatory motive for initiating and continuing the traffic stop.
The majority asserts that “the stop could not have been racially motivated” because the window tint would have prevented Trooper Swicord from identifying the occupants’ race before pulling them over. This contention, which was raised for the first time by the government on appeal, finds no support in the record. In fact, it is directly contradicted by Trooper Swicord’s testimony that he was parked on the median when Mason drove by (thereby giving him a view through the clear windshield of the vehicle) and that he could observe Mason and Govan speaking to each other before pulling over. When, as here, the district court denies a § 2255 motion without holding an evidentiary *836 hearing, “we review the facts in the light most favorable to the § 2255 movant.” United States v. Poindexter, 492 F.3d 263, 267 (4th Cir.2007). At the very least, this is a disputed material fact that merits an evidentiary hearing. United States v. White, 366 F.3d 291, 297 (4th Cir.2004).
The majority believes that Mason’s counsel acted competently because she pursued a Fourth Amendment claim instead of a selective enforcement claim. But as the majority itself is forced to admit, Fourth Amendment and Equal Protection Clause challenges are not mutually exclusive. And while the standard for effective appellate counsel presumes that an attorney acts reasonably in choosing to pursue one claim over another, see, e.g., Smith v. Robbins, 528 U.S. 259, 287-88, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), the standard for trial counsel makes no such presumption. The fact that counsel was advancing a Fourth Amendment claim did not relieve her of her duty to conduct a reasonable investigation into a selective enforcement claim.
Counsel’s failure to develop a selective enforcement claim prejudiced Mason. Although the majority makes much of the fact that Armstrong sets a high bar for showing selective enforcement, Mason need only establish a reasonable probability that the outcome of the proceeding would have been different but for counsel’s deficient performance. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Given Trooper Swicord’s subjective criteria for pursuing potential window tint violations, his race-tinged remarks, and the inconsistencies between his testimony and the traffic stop video, it is at least reasonably probable that Mason’s trial counsel could have mounted a meritorious selective enforcement claim, and that such a claim would have resulted in Mason’s freedom. A successful Equal Protection Clause challenge would have required dismissal of charges, or at the very least suppression of key evidence obtained during the traffic stop. See United States v. Steele, 461 F.2d 1148, 1151 (9th Cir.1972) (“A defendant cannot be convicted if he proves unconstitutional discrimination in the administration of a penal statute.” (citing Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 588, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961))).
Of course the record does not conclusively establish a successful Equal Protection Clause challenge; trial counsel did not develop such a claim. Strickland makes clear that counsel cannot escape accountability for failing to pursue a course of action simply by making a “strategic choice.” To withstand constitutional scrutiny, such a choice must be based on either a reasonable investigation or a reasonable decision that investigation was unnecessary. 466 U.S. at 690-91, 104 S.Ct. 2052. Here, Mason’s trial counsel was confronted with numerous indicators that race may have motivated Trooper Swi-cord’s actions, but she did not investigate these red flags. Her failure to develop an Equal Protection Clause challenge in the face of this record cannot meet the standard for effective assistance guaranteed by the Sixth Amendment. Both Trooper Swicord’s and Mason’s narratives remain shrouded in uncertainty; at the very least, an evidentiary hearing is required. I dissent from the majority’s holding on this issue.

. Mason need not prove that investigation would have produced evidence of discriminatory effect in order to show that his counsel’s failure to investigate was unreasonable. See Becton v. Barnett, 920 F.2d 1190, 1193-94 (4th Cir.1990) (holding that defendant was entitled to an evidentiary hearing on his claim that counsel was ineffective for failing to investigate his mental capacity even though he had not proven he was mentally incompetent at trial).

. Mason’s window transparency was 26 percent, just slightly below the legal minimum of 32 percent plus or minus three percent. Ga. Code § 40-8-73.1(b)(2).

. As Mason points out, the term “spook” is a racial epithet. See Oxford English Dictionary (2d ed.1989) (defining "spook” as "[a] derogatory term for a black person”).